Claude NORMAN, et al., Plaintiff,

Eloise Norman, Plaintiff-Appellant,

v.

STATE FARM FIRE & CASUALTY CO., Defendant-Appellee.

No. 86–2568

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 2, 1986.

James P. Thompson, Houston, Tex., for Eloise Norman.

Fulbright & Jaworski, Katherine D. Hunt, Houston, Tex., for defendant-appellee.

Before GEE, JOLLY, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

This curious appeal presents issues arising from the destruction, by arson of the husband, of a married couple's insured residence.[1] The structure was community property. The fire insurance carrier denied liability and, at the ensuing trial, the jury found that Norman intentionally burned the house. In reliance on the apparently settled Texas law that neither spouse could recover insurance proceeds when either of them deliberately destroyed jointly-owned, insured property, the trial court gave judgment against both of the Normans.

A few days earlier, however, and unknown to our court, the Texas Supreme

---

1. Appellant's brief asserts that she is presently "separated from her husband with divorce pending." Nothing in the record supports this intimation; but even were we to accept it as fact, the result of this appeal would not be altered.

Court had partially abandoned the established rule, holding that it did not apply where separate property held in undivided interests by a husband and a wife was destroyed by the husband's act of arson, the wife being innocent of any complicity. *Kulubris v. Texas Farm Bureau Underwriters,* 706 S.W.2d 953 (1986). The Texas Court's opinion places the burden of proving a negative—a lack of innocence on the part of the non-acting spouse—on the defendant insurance carrier. *Id.,* at 955. It expressly recognizes and declines to rule on the factual situation presented by today's case:

> Texas courts are faced with an additional problem in this situation because we are a community property state. It is not necessary for us to address that particular problem at this time inasmuch as the mobile home in question was a gift to Betty and John and as such an undivided one-half interest was the separate property of each of them. We are not to be understood as holding that an innocent spouse is barred from recovering under an insurance policy covering community property. We do not have that fact situation before us and therefore do not address the problem of how to compensate the innocent spouse and yet not permit benefit to the wrongdoing spouse. That problem will be addressed when and if it is presented to us.

706 S.W.2d, at 955.

It is presented to us by today's appeal; and, obedient to our obligation to perform as would a state appellate court in this diversity case, we turn to the Texas Court's mode of analysis in *Kulubris.* There the court isolated four policy considerations for evaluation in such a case:

(1) That the wrongdoer not benefit from his wrongdoing;

(2) prevention of fraud on the insurance company;

(3) prevention of unjust enrichment by the insurance company;

(4) refusal to impute the criminal acts of the wrongdoer to an innocent victim.[2]

It seems patent, although the *Kulubris* court does not say so, that the first of these considerations is by far the dominant one. The latter three primarily concern finances, but the first addresses not only these but the public safety and morals: when buildings are torched, lives may be lost and other property jeopardized. The law should assiduously seek, therefore, to avoid holding out any incentive to such actions and should be diligent to assure that it permits no benefits to be derived from them by their perpetrators. We conclude that it would be a strange rule indeed that guaranteed the would-be arsonist a minimum of one-half of the insured value of his building—paid in cash and as community property—even were he found guilty of the act, so long as he arranged matters so that the insurance company could not prove that he had let his spouse in on his scheme. That would be the apparent result were we to engraft the *Kulubris* separate-property rule on the community property case presented today, and we therefore decline to do so.

To be sure, we recognize that legislative, perhaps even judicial, initiatives can be imagined that would remove such an incentive to fraud. One such would be a rule that the deliberate destruction of community property by one spouse works, in and of itself, a partition of the spouses' interests in the property so that the other spouse, if innocent of complicity, could recover insurance proceeds on his or her half. Others can be imagined. We are not the custodians of Texas's community property law, however; and even were we to conclude that such a rule would be a wise measure, confecting it would be an improper exercise for us. We also recognize that developments after the fact of destruction—developments such as a divorce and property allocation—may so bring matters about that the culpable spouse receives no benefit

---

**2.** By this we assume the court to intend to say that civil consequences, rather than vicarious criminal liability, should not be visited upon the other spouse, there being no question that the latter could be countenanced.

from his act of arson. It is, however, his expectations *before* the fact that concern us today. This being the case, we decline to countenance a rule that one who contemplates burning down a community-owned building for the insurance proceeds can expect to recover its full value if the carrier is unable to establish *his* arson, and half of that even if it does, in the event that it is unable to prove that his spouse was an accomplice.

We have examined Mrs. Norman's other point for reversal and conclude that it does not merit discussion.

AFFIRMED.